THE GENERAL KNOX.

FLANNERY v. THE GENERAL KNOX.

L'HOMMEDIEU v. SAME.

CHAPMAN DERRICK & WRECKING CO. v. SAME.

(District Court, E. D. New York. May 4, 1896.)

SALVAGE—FIRE AT THE DOCK—FIRE DEPARTMENT—CLOSING PORTS.

Fire broke out in the hold of the ship G. K., which could only be put out by pumping her full of water. The libellant's boats arrived between 3:30 and 5:30 o'clock, a. m. and played streams until about 2 o'clock; but the chief work in filling up the ship was done by the Fire Department boats, Havemeyer and New Yorker, which arrived at about 4 o'clock a. m. At about 9 or 10 a. m. it was found the water was running out through some open ports below the water line, as fast as it was pumped

in. Three hours were consumed by the diver of one of the libellants' boats, and assistants, in closing these ports: *Held*, that though the main work of filling the ship was done by the Fire Department, prompt assistance by tugs in cases of ships on fire should receive encouragement by suitable compensation for whatever aid they in fact render; and in the above cases $100., $200. and $300. respectively were allowed to the libellant's tugs.

In Admiralty—Salvage—Fire at the Dock.

Carpenter & Park, for Chapman Derrick & Wrecking Co.

Hyland & Zabriskie, for Flannery.

Stewart & Macklin, for L'Hommedieu.

George A. Black, for claimant.

BROWN, District Judge. The fire broke out in the hold or betweendecks of the General Knox and was confined to the middle part of the ship. The work of putting it out was mainly done by flooding the ship by pumping her full of water. Most of this work was undoubtedly done by the Fire Department. About 12 land engine companies, all told, were more or less employed from about half past 3 in the morning till after 2 in the afternoon. The fire boats Havemeyer and New Yorker were also in attendance from about 4 o'clock in the morning till about 2 in the afternoon. Flannery's tug, the Bulkley, arrived about half past 5 and played one stream by a hose run across the dock. The Flushing arrived about half past 4 and played two streams, which were probably of some special service at first in the main hatch where flames were seen. The Hustler lay in the same slip with the ship, and got two streams going soon after the fire broke out. At about 9 or 10 o'clock it was found that no progress was making in filling the ship, for the reason that some ports were open on the port side beneath the water line, so that the water run out as fast as it was pumped in. The Hustler's diver and men were procured to close those ports, which took about 3 hours. During a portion of this time the pumping was necessarily suspended. After these ports were closed the progress of filling the ship was rapid, and all the boats were discharged at 2 o'clock p. m.

It is urged that the list of the ship to port was so great that her hatches would let the water out as much as the open ports; so that the closing of the port holes was of no service.

But I do not think the evidence, and the subsequent filling of the ship, are compatible with this theory; and I therefore find that the closing of the ports by the Hustler's diver and men was a special and valuable service.

Aside from this service, and the Flushing's first pumping, the work of these tugs in helping to fill the ship was of small importance, compared with the amount of water pumped in by the land engines and fire boats. For so much as they did, however, they deserve compensation; and while tugs cannot be justified in any obstruction of superior work by the Fire Department, nor receive compensation while doing so, the necessity remains of encouraging tugs to go promptly to the aid of ships on fire, by the allowance of some award where they take part in the work.

To the Bulkley, which played but one stream, I allow $100.; to the Flushing, $200.; to the Hustler, $300., with costs.